**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000006
24-OCT-2011
08:31 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STEVEN NISHIMURA, IN HIS OFFICIAL CAPACITY
AS THE CHAIRMAN OF THE KAUAI COUNTY COMMITTEE
OF THE DEMOCRATIC PARTY OF HAWAII,
Plaintiff-Appellant,
v.
HARRY E. WILLIAMS, Defendant-Appellee

NO. CAAP-10-0000006

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 10-1-0186)

OCTOBER 24, 2011

FOLEY, PRESIDING J., REIFURTH AND GINOZA, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiff-Appellant Steven Nishimura (Nishimura), in his official capacity as the Chairman of the Kauai County Committee of the Democratic Party of Hawaii, appeals from the Final Judgment filed on September 14, 2010 in the Circuit Court of the Fifth Circuit[1] (circuit court). The circuit court dismissed Nishimura's Verified Complaint against Defendant-Appellee Harry E. Williams (Williams) and entered judgment in favor of Williams and against Nishimura.

---

[1] The Honorable Randal G.B. Valenciano presided.

I.

On August 19, 2010, Nishimura filed a Verified Complaint, alleging in relevant part:

> 3.     Plaintiff [Nishimura] is the Chairman of the Kauai County Committee of the Democratic Party of Hawaii.
>
> 4.     Defendant [Williams] is a nominee in the Republican primary election for the 14th District.
>
> 5.     Scott T. Nago (Nago) is the State of Hawaii's Chief Election Officer.
>
> 6.     [Hawaii Revised Statutes (HRS) §] 12-3. Nomination Papers; format; limitations. [sic] states in part:
>
>> (a)   No candidate's name shall be printed upon any official ballot to be used at any primary, special primary, or special election unless a nomination paper was filed [on] the candidate's behalf and in the name by which the candidate is commonly known. The nomination paper shall be in a form prescribed and provided by the chief election officer containing substantially the following information:
>>
>> . . .
>>
>>> (6)   A sworn certification by self-subscribing oath by the candidate that the candidate qualifies under the law for the office the candidate is seeking and that the candidate has determined that, except for the information provided by the registered voters signing the nomination papers, all of the information on the nomination papers is true and correct;
>>>
>>> (7)   A sworn certification by self-subscribing oath by a party candidate that the candidate is a member of the party;
>>
>> . . .
>>
>> (f)   Nomination papers which are incomplete and do not contain all of the certifications, signatures, and requirements of this section shall be void and will not be accepted for filing by the chief election officer or clerk.   (Emphas[e]s added.)
>
> 7.     HRS [§] 12-7. Filing of oath., [sic] states in part:
>
>> The name of no candidate for any office shall be printed upon any official ballot, in any election, unless the candidate shall have taken and subscribed to the following written oath or affirmation, and filed the oath with the candidate's nomination papers.
>>
>> . . .

> The oath or affirmation shall be subscribed before the officer administering the same, who shall endorse thereon the fact that the oath was subscribed and sworn to or the affirmation was made together with the date thereof and affix the seal of the officer's office or of the court of which the officer is a judge or clerk. It shall be the duty of every notary public or other public officer by law authorized to administer oaths to administer the oath or affirmation prescribed by this section and to furnish the required endorsement and authentication. (Emphas[e]s added.)

8. Williams' nomination papers for the 14th District were filed after the statutory filing deadline of 4:30 p.m., Tuesday, July 20, 2010.

9. Williams' nomination papers were allowed to be filed after the statutory filing deadline by Nago based upon David R. Hamman's (Hamman) July 19, 2010 alleged "withdrawal" as a "candidate" for the 14th District.

10. On or about July 20, 2010, Nago allowed the Republican Party three (3) additional days until 4:30 p.m. on July 22, 2010 to file nomination papers for a "replacement" nominee for the 14th District due to Hamman's "withdrawal" on July 19, 2010 from the 14th District Primary election.

11. On July 21, 2010 Williams obtained an Application for Nomination Papers for the 14th District.

12. On July 22, 2010 at 8:15 a.m., Williams filed his nomination papers to run in the Republican primary election for the 14th District.

13. Williams' nomination papers were filed on July 22, 2010 after the 4:30 p.m. July 20, 2010 statutory deadline, pursuant to Nago's erroneous application and interpretation of HRS [§] 12-1, et seq. and HRS [§] 11-117 and HRS [§] 11-118.

14. Nago's reliance on HRS [§] 11-117 and HRS [§] 11-118 to allow the Republican Party three (3) additional days to find a "replacement" candidate for Hamman is wrong as a matter of law.

15. [Hawai'i Administrative Rules (HAR) §] 3-172-1 defines a "candidate" as follows:

> "Candidate means an individual who has qualified for placement on the ballot." (Emphasis added.)

16. Hamman was never a "candidate" for the 14th District as defined by HAR [§] 3-172-1, and therefore could not "withdraw," as Hamman never "qualified for placement on the ballot."

17. On or about July 13, 2010, [Hamman] obtained an Application for Nomination Papers for the 14th District.

18. On July 19, 2010 at approximately 11:00 a.m. Hamman filed with the County of Kauai, Office of the County Clerk, Elections Division (County Clerk), unsigned nomination papers to run in the Primary election for the 14th District.

19. By letter dated "7/19/10" and containing the time of "11:32 a.m.," which letter was received by the County Clerk, Elections Division, on July 19, 2010, at 12:05 p.m., Hamman "withdrew" his unsigned nomination papers for the 14th District.

20. Hamman's nomination papers for the 14th District filed July 19, 2010 at 11:00 were incomplete as a matter of law, as Hamman did not sign the "Certification by the Partisan Candidate" as required by HRS [§] 12-3(a)(7).

21. Hamman's nomination papers for the 14th District were incomplete as a matter of law, as Hamman did not sign the Oath of Loyalty or Affirmation as required by HRS [§] 12-7.

22. Hamman's nomination papers filed on July 19, 2010 at 11:00 a.m. for the 14th District were incomplete, as the nomination papers did not contain all of the certifications, signatures and requirements of HRS [§] 12-3 and HRS [§] 12-7, and therefore are void as a matter of law pursuant to HRS [§] 12-3(f) and HRS [§] 12-7.

23. Hamman's nomination papers for the 14th District should not have been "accepted" for filing by the County Clerk on July 19, 2010 as pursuant to HRS [§] 12-3(f) and HRS [§] 12-7 the nomination papers were incomplete and void as a matter of law.

24. On July 19, 2010 Hamman did not qualify as a "candidate" and therefore could not "withdraw" his incomplete nomination papers which were null and void as a matter of law.

25. At the time Hamman filed his nomination papers for the 14th District, on July 19, 2010 at 11:00 a.m. Hamman had no intention of running in the Republican primary election for the 14th district.

26. At the time Hamman filed his nomination papers for the 14th District, Hamman's only intent and purpose was to attempt to create the appearance of a "vacancy" by his "withdrawal" from the 14th District race, in an intentional effort to create additional time to nominate a Republican candidate for the primary election for the 14th District.

27. On July 19, 2010 at 12:05 p.m. Hamman obtained an Application for Nomination Papers for the Republican primary election for the State of Hawaii's Senate, Island of Kauai, 7th District.

28. On July 19, 2010 at 12:31 p.m. Hamman filed his signed nomination papers to run in the Republican Primary election for the State Senate, 7th District.

Nishimura sought relief from the circuit court as follows:

> A.      Declare that [Hamman's] incomplete nomination papers should not have been "accepted" for filing on July 19, 2010 at 11:00 a.m. by the County of Kauai, Office of the County Clerk, Elections Division, and in accordance with HRS [§] 12-3(f) and HRS [§] 12-7 are void as a matter of law;
>
> B.      Declare that Hamman was never a candidate for the 14th District, and therefore could not "withdraw," as Hamman never qualified for "placement on the ballot";
>
> C.      Declare that at the time of the statutory close of filing for the primary election on Tuesday, July 20, 2010 at 4:30 p.m. there were no valid nomination papers filed for any person in the Republican Party for the 14th District;
>
> D.      Declare that the Chief election officer's decision to allow an additional three (3) days for the Republican Party to find a "replacement" due to [Hamman's] "withdrawal" on July 19, 2010 is wrong as a matter of law, as Hamman's nomination papers should not have been "accepted" for filing on July 19, 2010, and were void as a matter of law; [and]
>
> E.      Declare that [Williams'] nomination papers filed on July 22, 2010 after the statutory filing deadline of 4:30 p.m. on July 20, 2010 for the primary election are null and void, and [Williams] shall not be a candidate in the District 14 Republican Primary Election[.]

In dismissing Nishimura's Verified Complaint, the circuit court made the following Findings of Fact (FOFs) and Conclusions of Law (COLs):

### I. FINDINGS OF FACT

1.      On July 19, 2010 at 11:00 a.m., [Hamman] filed nomination papers to run as a Republican candidate for State House of Representatives District 14[].

2.      [Hamman] did not sign the oath of loyalty or affirmation in his nomination papers for District 14. However, the County Clerk accepted and filed the nomination papers submitted by [Hamman].

3.      Upon the County Clerk's acceptance and filing of [Hamman's] nomination papers for District 14, [Hamman] was an official candidate for District 14.

4.      On July 19, 2010, at 12:05 p.m., [Hamman] withdrew his nomination papers for the 14th District.

5.      On July 19, 2010, at 12:31 p.m., [Hamman] filed nomination papers to run as the Republican candidate for the State Senate, Kauai.

6.  On July 20, 2010, Chief Election Officer [Nago], via Lori Tomczyk, ballot operations, notified the Republican Party that the Republican Party had three (3) additional days, until 4:30 p.m. on July 22, 2010, to notify the Chief Elections Officer of a replacement candidate for the 14th District.

7.  On July 21, 2010, the Hawaii Republican Party notified, via email, the Elections Office of its nomination of [Williams] as the replacement candidate for the 14th District.

8.  On July 22, 2010, at 8:15 a.m., [Williams] timely filed his nomination papers to run as the Republican candidate for the 14th District.

9.  [Williams] is a candidate for the 14th District.

### II. CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this matter.

2.  When the County Clerk accepted and filed the nomination papers submitted by [Hamman] for the 14th District, [Hamman] became an official candidate for the 14th District.

3.  [Hamman] appropriately withdrew his candidacy for the 14th District.  See HRS [§] 11-117.

4.  Once [Hamman] withdrew, the Chief Elections Officer gave notice to the Republican Party to submit a replacement candidate within the deadlines described under HRS [§] 11-118(b).

5.  The Republican Party submitted notice of the replacement candidate, [Williams], to the Chief Elections Officer via email within the allotted time frame of HRS [§] 11-118.

6.  [Williams] timely filed his nomination papers as the replacement candidate.

7.  [Williams] is a candidate representing the Republican Party for the office of State House of Representatives, District 14.

On appeal, Nishimura contends FOFs 2, 3, 4, 8, and 9 are erroneous and COLs 2, 3, 4, 5, 6, and 7 are wrong.  He contends the circuit court erred in "finding and concluding" that (1) "upon the County Clerk's 'acceptance' on July 19, 2010 of [Hamman's] unsigned nomination papers for the Republican primary election for District 14, Hamman became an 'official candidate'" and (2) "based upon Hamman's 'withdrawal' from the District 14 race on July 19, 2010, the Office of Elections was authorized

pursuant to HRS [§] 11-117 and/or HRS [§] 11-118 to allow the Republican Party three additional days to identify a 'replacement' candidate for the District 14 primary race."

## II.

**A.   This case falls within the exception to the mootness doctrine.**

In <u>Diamond v. State of Hawai'i, Bd. of Land & Natural Res.</u>, 112 Hawai'i 161, 145 P.3d 704 (2006), the Hawai'i Supreme Court stated that it has

> "repeatedly recognized an exception to the mootness doctrine in cases involving questions that affect the public interest and are 'capable of repetition yet evading review.'" *Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002) (citations omitted). In *Okada*, [the supreme court] stated:
>
> > Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question. The phrase, "capable of repetition, yet evading review," means that a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit.
>
> *Id.* at 196-97, 53 P.3d at 804-05 (citations, quotation signals, and block quotation format omitted).

<u>Id.</u> at 170, 145 P.3d 713; <u>see also</u> <u>McCabe Hamilton & Renny Co. v. Chung</u>, 98 Hawai'i 107, 43 P.3d 244 (Haw. App. 2002).

The instant case falls squarely within this mootness exception.

**B.   The circuit court erred in concluding that upon the County Clerk's acceptance of Hamman's unsigned nomination papers for the Republican primary election for District 14, Hamman became an official candidate.**

HRS Chapter 12 (Primary Elections), § 12-1 (2009 Repl.) titled "Application of chapter," provides that "[a]ll candidates

for elective office, except as provided in section 14-21, shall be nominated in accordance with this chapter and not otherwise."

HRS § 12-3 (2009 Repl.), titled "Nomination Papers; format; limitations," provides in part:

> (a) No candidate's name shall be printed upon any official ballot to be used at any primary, special primary, or special election unless a nomination paper was filed [on] the candidate's behalf and in the name by which the candidate is commonly known. The nomination paper shall be in a form prescribed and provided by the chief election officer containing substantially the following information:
>
> . . . .
>
> (6) A sworn certification by self-subscribing oath by the candidate that the candidate qualifies under the law for the office the candidate is seeking and that the candidate has determined that, except for the information provided by the registered voters signing the nomination papers, all of the information on the nomination papers is true and correct;
>
> (7) A sworn certification by self-subscribing oath by a party candidate that the candidate is a member of the party;
>
> . . . .
>
> (f) Nomination papers which are incomplete and do not contain all of the certifications, signatures, and requirements of this section shall be void and will not be accepted for filing by the chief election officer or clerk.

HRS § 12-7 (2009 Repl.), titled "Filing of oath," provides in part:

> The name of no candidate for any office shall be printed upon any official ballot, in any election, unless the candidate shall have taken and subscribed to the following written oath or affirmation, and filed the oath with the candidate's nomination papers.
>
> . . . .
>
> The oath or affirmation shall be subscribed before the officer administering the same, who shall endorse thereon the fact that the oath was subscribed and sworn to or the affirmation was made together with the date thereof and affix the seal of the officer's office or of the court of which the officer is a judge or clerk.
>
> It shall be the duty of every notary public or other public officer by law authorized to administer oaths to administer the oath or affirmation prescribed by this section and to furnish the required endorsement and authentication.

Hamman did not sign the "Certification by the Partisan Candidate," as mandated by § 12-3(a)(7), and either the "Oath of Loyalty" or the "Affirmation," as mandated by § 12-7.

The nomination papers "filed" by Hamman on July 19, 2010 contain a warning to a nominee that stated:

NOTICE: Pursuant to State law nomination papers that are incomplete and/or nomination papers that have been altered by anyone other than the Chief Election Officer or the County Clerk will not be accepted for filing.

Hamman's incomplete nomination papers were void on their face, and the County Clerk had no authority to "accept" the nomination papers. HRS § 12-3(f). Therefore, Hamman did not become an official candidate for the 14th District.

In Tataii v. Cronin, 119 Hawai'i 337, 198 P.3d 124 (2008), the Hawai'i Supreme Court in deciding an election contest complaint stated that "[w]here the language of a statute is plain and unambiguous that a specific time provision must be met, it is mandatory and not merely directory." Id. at 339, 198 P.3d 126 (internal quotation marks and citation omitted).

HRS §§ 12-3(f) and 12-7 are plain and unambiguous. Because these two sections are unambiguous, their plain language must be construed as mandatory and not merely directory. Section § 12-3(f) provides that nomination papers that are "incomplete and do not contain all of the certifications, signatures, and requirements of this section shall be void and will not be accepted for filing by the chief election officer or clerk." Section 12-7 prohibits the name of any candidate from being printed upon any official ballot, unless "the candidate shall have taken and subscribed to the following written oath or affirmation, and filed the oath with the candidate's nomination papers."

Hamman failed to sign the "Certification by the Partisan Candidate" and either the "Oath of Loyalty" or the "Affirmation." The circuit court erred in concluding the County

Clerk could legally accept and file Hamman's nomination papers. Section 12-3(f) prohibited the County Clerk from doing so.

        C.    **The circuit court erred in concluding that based upon Hamman's withdrawal from the District 14 race on July 19, 2010, the Office of Elections was authorized pursuant to HRS § 11-117 (2009 Repl.) and § 11-118 (2009 Repl.) to allow the Republican Party three additional days to identify a replacement candidate for the District 14 primary race.**

The circuit court erred in concluding that based upon Hamman's "withdrawal" from the District 14 race on July 19, 2010, the Office of Elections was authorized pursuant to HRS § 11-117 and/or § 11-118 to allow the Republican Party three additional days to identify a "replacement" candidate for the District 14 primary race. Hamman could not withdraw his nomination papers as the papers were void and should never have been accepted and filed by the County Clerk. Therefore, HRS §§ 11-117 and 11-118 were not applicable, and the Office of Elections had no authority to give the Republican Party additional days to identify a replacement candidate. Without these additional days, Williams' nomination papers were filed after the statutory deadline of Tuesday, July 20, 2010, at 4:30 p.m., and his name should not have been on the ballot.

### III.

Therefore, the Final Judgment filed on September 14, 2010 in the Circuit Court of the Fifth Circuit is reversed.

On the opening brief:

Harold Bronstein
for Plaintiff-Appellant.

_Daniel R. Foley_

_Lawrence M. Reifurth_

_Lisa M. Ginoza_