**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-10-0000066**
**13-DEC-2012**
**08:10 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---O0O---

JAMAE KAWAUCHI, in her official capacity
as County Clerk of the COUNTY OF HAWAI'I,
a municipal corporation of the State of Hawai'i,
Plaintiff-Appellant/Cross-Appellee,
v.
MAILE P. DAVID, Defendant-Appellee/Cross-Appellant

NO. CAAP-10-0000066

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 10-1-0226)

DECEMBER 13, 2012

NAKAMURA, C.J., LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY REIFURTH, J.

This appeal involves (1) a constitutional challenge to
Article III, Section 3-3 of the County Charter for the County of
Hawai'i ("Section 3-3"),[1] which requires that a candidate for
local public office be registered to vote in the district in
which the candidate intends to run for at least ninety days

---

[1]     Section 3-3 of the Hawai'i County Charter states:

**Qualifications.**

        A person must be a citizen of the United States of
America and have been a duly qualified elector of the county
for at least one year immediately preceding election or
appointment to the county council.  A person must also have
been a resident and registered voter of the district from
which the person is to be elected or appointed for at least
ninety (90) days immediately preceding the primary election
or the appointment.

County Charter, County of Hawai'i § 3-3 (2010).

before the primary election, (2) a claim that the appeal by the County of Hawai'i is moot, and (3) a claim that the Circuit Court of the Third Circuit ("Circuit Court")[2] lacked authority to consider the county clerk's challenge to the candidate's nomination papers because certain procedural deadlines under Hawaii Revised Statutes ("HRS") § 12-8[3] were not met.

We agree that the public-interest exception to the mootness doctrine applies, but conclude that the procedural

---

[2]  The Honorable Glenn S. Hara ("Judge Hara") presided.

[3]  At the time, HRS § 12-8 stated in pertinent part:

> (a) All nomination papers filed in conformity with section 12-3 shall be deemed valid unless objection is made thereto by a registered voter, an officer of a political party whose name is on file with the chief election officer, the chief election officer, or the county clerk in the case of a county office. All objections shall be filed in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to the primary or special election.
>
>     . . . .
>
> (e) If the chief election officer or clerk in the case of county offices determines that the objection may warrant the disqualification of the candidate, the chief election officer or clerk shall file a complaint in the circuit court for a determination of the objection; provided that such complaint shall be filed with the clerk of the circuit court not later than 4:30 p.m. on the seventh working day after the objection was filed.
>
>     . . . .
>
> (g) If an officer of a political party whose name appears on file with the chief election officer, the chief election officer, or clerk in the case of county offices files a complaint in the circuit court, the circuit court clerk shall issue to the defendants named in the complaint a summons to appear before the court not later than 4:30 p.m. on the fifth day after service thereof.
>
> (h) The circuit court shall hear the complaint in a summary manner and at the hearing the court shall cause the evidence to be reduced to writing and shall not later than 4:30 p.m. on the fourth day after the return give judgment fully stating all findings of fact and of law. The judgment shall decide the objection presented in the complaint, and a certified copy of the judgment shall forthwith be served on the chief election officer or the clerk, as the case may be.
>
> (i) If the judgment disqualifies the candidate, the chief election officer or the clerk shall follow the procedures set forth in sections 11-117 and 11-118 regarding the disqualification of candidates.

HAW. REV. STAT. § 12-8 (2009).

2

deadlines in HRS § 12-8 are mandatory and not directory. Therefore, the Circuit Court lacked the authority to decide the county clerk's challenge at the time that it issued its final judgment, and we do not address Section 3-3's constitutionality.

I.    Background

A.    The complaint and summons.

On August 2, 2010, Kenneth G. Goodenow,[4] in his official capacity as County Clerk of the County of Hawai'i ("County Clerk"), filed a Complaint for Declaratory Relief ("Complaint") in the Circuit Court pursuant to HRS § 12-8 that contained the following allegations:  On June 25, 2010, Defendant-Appellee/Cross-Appellant Maile P. David ("David") presented herself in the Kona Satellite Elections Office ("Kona Office") "to apply for nomination papers to run as a candidate in Council District 6."  David used to live in Council District 7 and, as of June 25, 2010, remained registered to vote in Council District 7.  While David was attempting to obtain nomination papers, county employees determined that she did not meet Section 3-3's ninety-day-registered-voter requirement and informed her of this determination.  David left the Kona Office with the application form for the nomination papers.

On July 1, 2010, David sent a letter to the County Clerk demanding that she be allowed to file nomination papers as a candidate for Council District 6.  The County Clerk rejected David's demand on the grounds that David was not eligible to run for office in Council District 6.

On July 7, 2010, David filed a Petition for Preemptory Writ of Mandamus Directed to the Respondent Kenneth Goodenow, County Clerk of the County of Hawai'i, State of Hawai'i ("Mandamus Petition") with the Hawai'i Supreme Court, seeking an order directing the County Clerk to issue nomination papers to David and to then receive and file those papers.  The supreme court granted the Mandamus Petition in part on July 15, 2010, and

_____

[4]    Jamae Kawauchi was substituted for former County Clerk Kenneth G. Goodenow during the pendency of this appeal by stipulation.

ordered the County Clerk to issue the nomination papers.

On July 19, 2010, David filed her nomination papers with the County Clerk. David "certified under penalty of law that she 'will qualify under the law for the office for which [she is] seeking.'"

On July 20, 2010, the County Clerk accepted and filed David's nomination papers, placing David on the ballot as a candidate for Hawai'i County Council for Council District 6. That same day, David filed a complaint with the Circuit Court in Civil No. 10-1-259K, *David v. Goodenow*, seeking, among other things, a determination that the 90-day-registered-voter requirement in Section 3-3 is "invalid, unconstitutional or otherwise not applicable" to David.[5]

On July 22, 2010, the County Clerk sent a letter to the Elections Program Administrator for the County Office of Elections giving official notice that he objected under HRS § 12-8(a) to David's qualifications "to seek election to and serve as the representative of Council District 6" and "formally notified" David of his objections. Based on these allegations, the County Clerk filed the Complaint with the Circuit Court on August 2, 2010, seeking, among other things, a declaration that David "does not meet the legal criteria for the holding of Council office. . . ." That same day, the Clerk of the Circuit Court issued a standard Summons that required David to serve an answer to the Complaint within 20 days following service of the Summons.

On August 10, 2010, David filed a document dated August 5, 2010 entitled Return and Acceptance of Service of Complaint Filed August 2, 2010 ("RASC"), which stated: "MAILE P. DAVID, the Defendant herein, by and through her attorney, accepts service of the Complaint of Declaratory Relief (with attached Exhibits 1 to 6 and Summons) filed August 2, 2010 and by this pleading makes due return as to the service of said summons."

---

[5]   While the record does not address Civil No. 10-1-259K again, the docket of that case indicates that it was dismissed via stipulation on September 23, 2010, the same day that the final judgment was entered in the instant case.

B.    David's motion for partial summary judgment.

On August 11, 2010, David filed a motion for partial summary judgment, arguing that the Circuit Court lacked subject matter jurisdiction over the Complaint.  First, David noted that pursuant to HRS § 12-8(e), the County Clerk was required to file the Complaint in the Circuit Court within seven working days after the date "the objection was filed."  David claimed that the County Clerk's objection was filed on July 20, 2010, the date she received a letter from the County Clerk, addressed to her, which stated:

> Upon further consideration and consultation with the Office of Corporate Counsel, I will accept the filing of your nomination papers. . . .
>
> As discussed with you by telephone, I will file an objection pursuant to Hawai'i Revised Statutes [sic] Section 12-8 and will subsequently file a complaint in circuit court for a determination of this objection.

David argued that the County Clerk's subsequent July 22, 2010 letter to the Elections Program Administrator was unnecessary and had "no meaning or legal value."  Thus, David argued, the Complaint was untimely under HRS § 12-8(e) as it was not filed within seven working days after July 20, 2010, and, as a result, the Circuit Court "cannot grant relief under [the County Clerk's] Complaint."

Second, David argued that HRS § 12-8(g) required the Circuit Court to conduct an immediate hearing on the Complaint and that HRS § 12-8(h) required the entry of judgment "not later than 4:30 p.m. on the fourth day after the return."  David argued that she "submitted" her "return" on August 5, 2010, but did not receive a timely hearing pursuant to HRS § 12-8(h) and, because the Circuit Court proceedings did not comply with HRS § 12-8, the Circuit Court was therefore deprived of authority over the case.

In opposition, the County Clerk argued, first, that the seven-working-day period began to run on July 22, 2010, and, second, that HRS § 12-8(h) did not require a prompt hearing because David's name was already on the ballot.

Judge Greg K. Nakamura orally denied David's motion for partial summary judgment at a hearing on September 7, 2010. Judge Nakamura stated, first, that the seven-working-day period

began to run on July 22, 2010, the date the County Clerk filed an objection with the Elections Program Administrator. Second, Judge Nakamura, citing *Tataii v. Cronin*, 119 Hawai'i 337, 198 P.3d 124 (2008), held that the summons procedure provided for in HRS § 12-8(g) was directory, not mandatory, because

> [t]he purpose of H.R.S. § 12-8(g) is to have a determination made as soon as possible whether a candid -- whether a particular candidate for office is qualified or not. This is so that an election can proceed with as much clarity as possible regarding the identity of the candidates who are lawfully running for office. On the other hand, H.R.S. § 12-8(g) is not intended to allow a candidate who is not qualified to run for office or be elected to that office. Therefore, this Court determines that H.R.S. § 12-8(g) is directory and not mandatory and this Court continues to have jurisdiction over this matter.

Judge Hara filed a written order denying the motion for partial summary judgment on September 27, 2010 on substantially the same grounds as those in Judge Nakamura's oral ruling.

> C.    Findings of fact, conclusions of law, and judgment.

A hearing on the merits of the Complaint was held on September 9, 2010 before the Circuit Court, Judge Hara presiding. While it was undisputed that David was late in registering to vote in Council District 6, David argued that the ninety-day-registered-voter requirement was unconstitutional. At the conclusion of the hearing, the Circuit Court stated that it would rule in favor of David:

> So in weighing the . . . benefits or . . . particular kinds of . . . requirements that it might serve to the County as against the harm it does to Ms. David, I think the Court finds that the balance tips in favor of Ms. David. And so I would find . . . and issue a declaratory ruling that the requirement for being a registered voter 90 days prior to the primary election as a requirement for candidates for -- candidacy for the office of . . . county council . . . should not apply to . . . affect Ms. David's ability to run for council in this election.

On September 20, 2010, the Circuit Court issued its Findings and Conclusions on Summary Proceeding.[6] The Circuit Court found, pursuant to stipulation, that:

---

[6]    The Record on Appeal includes a second set of Findings and Conclusions on Summary Proceeding, dated and filed on September 23, 2010, which contains amendments to the September 20, 2010 Findings and Conclusions on Summary Proceeding.

a. Defendant is a citizen of the United States, is a life-long resident of the County of Hawai'i, has been and continues to be a registered voter in the County of Hawai'i for many years[,] and has physically resided in Kahauko, South Kona (in the area covered by County Council District Number Six) since December 2008.

b. County Council District Number Six covers the area of South Kona-Ka'u-Puna and Defendant seeks to be elected to this seat in the upcoming County of Hawai'i special election to be held on September 18, 2010.

c. Defendant moved to her present place of habitation after the last general election was held in November 2008. No elections were conducted in the County of Hawai'i after November 2008.

d. The present dispute arises out of the fact that Defendant changed her voter precinct registration from her former place of registration (which was in the area covered by County District Number Seven for North Kona) to her current voter precinct registration for the area covered by County Council District Number Six (South Kona-Ka'u-Puna) on June 25, 2010.

e. Defendant changed her voter precinct registration on June 25, 2010, the same day that she applied for nomination papers for County Council [] District Number Six. June 25, 2010 is 86 days prior to the September 18, 2010 State primary election.

The Circuit Court concluded that, applying Section 3-3 "on its face," David would be ineligible to run for Council District 6 because she was not registered to vote in that district at least ninety days prior to the primary election. The Circuit Court further concluded, however, that:

5. As to the 90-day voter registration requirement, this requirement places an additional requirement on Defendant in order for Defendant to serve as an elected representative of Council District Number Six.

6. Under either the "rational basis" test or "strict scrutiny" test, the 90-day voter registration requirement is an unreasonable burden on Defendant's ability to be a representative of Council District Number Six and is therefore invalid and not applicable to Defendant.

Based on these findings and conclusions, the Circuit Court entered the Final Judgment in favor of David and against the County Clerk on September 20, 2010.[1/]

David ultimately lost the 2010 primary election for Hawai'i County Council, Council District 6. *See* Primary Election 2010 - State of Hawaii - Hawaii County, Final Summary Report 1, 2

---

[1/]  The Record on Appeal includes a duplicate Final Judgment, dated (with stamped signature) and filed on September 23, 2010.

7

(Sept. 28, 2010, 6:12 PM), http://hawaii.gov/elections/results/2010/primary/files/coh.pdf.

## II. Points of Error

On appeal, the County Clerk argues that the Circuit Court erred by applying a balancing test, rather than a rational basis test, when declaring that Section 3-3's 90-day-registered-voter requirement was "invalid and not applicable to [David]," and that the Circuit Court erred in finding that the suspect provision did not pass the rational basis test.

On cross-appeal, David argues that the Circuit Court erred by denying David's motion for partial summary judgment because (1) the County Clerk's Complaint was not filed within seven working days after the filing of an objection as required by HRS § 12-8(e) and (2) the Circuit Court failed to hold a timely hearing pursuant to HRS § 12-8(g) and (h).

## III. Discussion

A. The case falls within the public-interest exception to the mootness doctrine.

The fact that David lost her primary election bid calls into question the justiciability of the parties' appeals. Although this case is no longer a live controversy, "when the question involved affects the public interest and an authoritative determination is desirable for the guidance of public officials, a case will not be considered moot." *Kaho'ohanohano v. State*, 114 Hawai'i 302, 333, 162 P.3d 696, 727 (2007) (quoting *Slupecki v. Admin. Dir. of Courts, State of Haw.*, 110 Hawai'i 407, 409 n.4, 133 P.3d 1199, 1201 n.4 (2006)) (emphasis and internal quotation marks omitted). The issues here fall squarely within the public-interest exception to the mootness doctrine. *See Nishimura v. Williams*, 126 Hawai'i 115, 119, 267 P.3d 699, 703 (App. 2011) (question of whether Kaua'i county clerk properly accepted candidate's nomination papers excepted from mootness doctrine); *cf. Johnston v. Ing*, 50 Haw. 379, 382, 441 P.2d 138, 140 (1968) (the form and content of an official ballot is a "matter of substantial public moment").

Thus, we will consider further the parties' arguments.

    B.    The failure to comply with mandatory procedural requirements in HRS § 12-8 precluded the entry of judgment.

Ultimately, we conclude that we cannot render a decision on the constitutional issue in this case because, after the Complaint was filed, mandatory procedures provided for in HRS § 12-8 were not followed. In support of this conclusion, we address (1) the legal framework for challenging nomination papers, (2) the legislative history behind HRS §§ 12-8(g) and (h), (3) the procedures that HRS §§ 12-8(g) and (h) appear to require, (4) whether the procedural provisions in HRS §§ 12-8(g) and (h) are mandatory or directory, and (5) whether such provisions were followed.

    1.    Overview of Chapter 12 of the Hawaii Revised Statutes.

Chapter 12 of the Hawaii Revised Statutes sets forth the procedures related to primary elections in Hawaiʻi. As of the 2010 primary election, primary elections were held "on the second to the last Saturday of September in every even numbered year[,]" with the exception that no primary election may precede a general election by less than forty-five days. HAW. REV. STAT. § 12-2 (2009). Except for the nomination of electors for the offices of the president and vice president of the United States of America, "[a]ll candidates for elective office . . . shall be nominated in accordance with [Chapter 12] and not otherwise." HAW. REV. STAT. §§ 12-1, 14-21 (2009).

To have one's name printed on a primary, special-primary, or special-election ballot, nomination papers must have been "filed in the candidate's behalf" and had to contain, among other things,

> [a] sworn certification by self-subscribing oath by the candidate that the candidate qualifies under the law for the office the candidate is seeking and that the candidate has determined that, except for the information provided by the registered voters signing the nomination papers, all of the information on the nomination papers is true and correct[.]

HAW. REV. STAT. §§ 12-3(a), (a)(6) (2009). With reference to

candidates for county offices, nomination papers, generally, were required to "be filed with the . . . [county] clerk . . . not later than 4:30 p.m. on the sixtieth calendar day prior to the primary, special primary, or special election . . . ." HAW. REV. STAT. § 12-6(1) (2009).

The procedure by which nomination papers could be challenged was provided in HRS § 12-8. Pursuant to § 12-8(a),

> *All nomination papers filed in conformity with section 12-3 shall be deemed valid unless objection is made thereto* by a registered voter, an officer of a political party whose name is on file with the chief election officer, the chief election officer, or *the county clerk in the case of a county office. All objections shall be filed in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to the primary or special election.*

HAW. REV. STAT. § 12-8(a) (2009) (emphasis added). If the county clerk "determines that the objection may warrant disqualification of the candidate," the clerk "shall file a complaint in the circuit court for a determination of the objection . . . not later than 4:30 p.m. on the seventh working day after the objection was filed." HAW. REV. STAT. § 12-8(e).

After the complaint was filed, the circuit court and its clerk assumed certain responsibilities.

> If . . . the chief election officer, or clerk in the case of county offices files a complaint in the circuit court, the circuit court clerk *shall* issue to the defendants named in the complaint a summons to appear before the court not later than 4:30 p.m. on the fifth day after service thereof.

HAW. REV. STAT. § 12-8(g) (emphasis added). Thereafter,

> The circuit court *shall* hear the complaint in a summary manner and at the hearing the court *shall* cause the evidence to be reduced to writing and *shall not* later than 4:30 p.m. on the fourth day after the return give judgment fully stating all findings of fact and of law. The judgment shall decide the objection presented in the complaint, and a certified copy of the judgment shall forthwith be served on the chief election officer or the clerk, as the case may be.

HAW. REV. STAT. § 12-8(h) (emphasis added).

Ultimately, if the candidate is disqualified "after the close of filing and the ballots have been printed," the clerk "may order the candidate's name stricken from the ballot or order that a notice of . . . disqualification be prominently posted at the appropriate polling places on election day." HAW. REV. STAT.

§§ 11-117(b), 12-8(i) (2009).

      2.    Legislative history behind HRS §§ 12(g) and (h).

The provisions at issue here, HRS §§ 12-8(g) and (h), include only some of the procedures found in HRS § 12-8, which defines the process by which unqualified candidates are to be officially disqualified and removed from consideration in a primary election. The critical language in §§ 12-8(g) and (h), however, has a long and unique history wholly separate from the remainder of HRS § 12-8, originating in Hawai'i statutes that concern contests for cause in primary and special primary elections.

Our historical analysis begins with *Rose v. Trask*, 27 Haw. 596 (Haw. Terr. 1923). Trask had been nominated at the 1923 primary election to be the democratic candidate for the office of sheriff of the City and County of Honolulu in the forthcoming municipal election. 27 Haw. at 597. Rose, unsatisfied with the result, filed a petition in the Hawai'i Supreme Court contesting Trask's nomination. *Id.* Trask argued that the supreme court lacked subject matter jurisdiction over the petition. *Id.*

The supreme court stated that the Primary Law, which governed primary elections, "contain[ed] no express provision permitting a contest of a primary election[,]" but also noted that the Primary Law provided that laws relating to elections applied to primaries to the extent that such laws are consistent with the Primary Law. *Id.* at 597-98. In this respect, the Municipal Act allowed contests of municipal elections, stating that interested candidates or any thirty voters could contest decisions of boards of inspectors by filing a petition in the supreme court "within thirty days following the election proposed to be contested . . . ." *Id.* at 598. The Municipal Act further stated:

      Sec. 1692. Summons. The clerks shall thereupon issue to the respondents named in such petition a summons to appear before the supreme court within ten days after the service thereof.

      Sec. 1695. Hearing, judgment. At the hearing, the court shall cause the evidence to be reduced to writing and shall give judgment, stating all findings of fact and of law. Such judgment may invalidate the election on the

grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the inspectors of election; or decide that a certain candidate, or certain candidates, received a majority or plurality of the votes cast and were elected. . . .

*Id.* at 598-99.

The supreme court concluded that the Municipal Act's election-contest laws were inconsistent with the Primary Law because, among other things, based on the Municipal Act's time periods, the completion date of a primary-election contest could quite plausibly extend beyond the date of the general municipal election. *Id.* at 600. Thus, the municipal-election-contest laws did not apply to primary elections. *Id.* at 602. Therefore, the court held that it lacked subject-matter jurisdiction to consider the petition because no law granted Rose the right to contest the primary election. *Id.*

As a legislative response to *Rose*, the Hawai'i Territorial Legislature in 1925 proposed S.B. No. 144 to explicitly allow contests of primary elections with judicial oversight. S. Stand. Comm. Rep. No. 119, in 1925 Senate Journal, at 431. The Senate Committee on Judiciary initially claimed that the object of S.B. No. 144 was "to apply to contests at primary elections the same provisions now applicable to general elections[,]" including Sections 1692 and 1695 of the Municipal Act. *Id.* However, the House Committee on Judiciary recommended several amendments to the bill — for instance, that the petition should be filed in a circuit court rather than the supreme court and that "[t]he court shall hear such contest in a summary manner[.]" H. Stand. Comm. Rep. No. 752, in 1925 House Journal, at 1776-77. The House Committee on Judiciary also recommended requiring the circuit court to issue its judgment "within eight days following *the return day of said summons.*" *Id.* at 1777 (emphasis added). S.B. No. 144 passed third reading in the House of Representatives with these amendments, and the amended version passed final reading in the Senate. 1925 Senate Journal, at 1249.

S.B. No. 144 was enacted as Act 226 in 1925. 1925 Haw. Sess. Laws Act 226, § 1 at 272-73. Act 226 required a petition contesting the decision of any board of inspectors in a primary

election to be filed within seven days following the primary election with the clerk of the circuit court of the judicial circuit in which the election district was situated. *Id.* Act 226 also provided:

> Section 49D. Summons. The clerk shall thereupon issue a summons to the respondents named in such petition to appear before such circuit court within five days after the service thereof.
>
> Section 49E. Hearing, judgment. The court shall hear such contest in a summary manner and at the hearing the court shall cause the evidence to be reduced to writing and shall within eight days following the return day give judgment fully stating all findings of fact and of law. Such judgment shall decide what candidate was nominated or elected, as the case may be, in the matter presented by the said petition, and a certified copy of such judgment shall forthwith be served on the county or city and county clerk who shall thereupon place the name of such candidate declared to be nominated on the ballot for the forthcoming general election and such judgment shall be conclusive of the right of the candidate so declared to be nominated; . . . .

*Id.* Act 226, in its final form, mandated that the summons require the respondents to appear in court within five days of service, rather than the ten days specified in Section 1692 of the Municipal Act. Act 226 also required judgment to be entered "within eight days following the return day"; although the final version did not specifically use the words "return day *of said summons*," the legislative history makes clear that that is how "return day" should be interpreted.[8]

In 1955, the Revised Laws of Hawaii were recodified, and the word "day" was dropped from the phrase "return day" without any apparent legislative enactment calling for the change; thus, the 1955 Revised Laws, as recodified, required the circuit court to enter judgment "within eight days following the return." *Compare* Rev. L. of Haw. § 11-112 (1955), *with* Rev. L. of Haw. § 283 (1945), *and* Rev. L. of Haw. § 7742 (1935).

In 1970, the Hawaiʻi State Legislature enacted Act 26, which, among other things, "[c]onsolidate[d] the primary, general, and special election contest provisions" and "[s]horten[ed] the time for decision in a primary election

---

[8] That is, "return day" means "a day on which a [respondent] must appear in court[.]" BLACK'S LAW DICTIONARY 454 (9th ed. 2009).

*contest*." *See* Legislative Reference Bureau, 1970 Digest and Index of Laws Enacted, 1970 Reg. Sess. at 31 (emphasis added); 1970 Haw. Sess. Laws Act 26, § 2 at 43-44. Thus, Act 26 stated that the circuit court "shall hear the contest in a summary manner and at the hearing the court shall cause the evidence to be reduced to writing and shall *within four days* following the return give judgment fully stating all findings of fact and of law." 1970 Haw. Sess. Laws Act 26, § 2 at 43-44 (emphasis added).

In 1973, the Legislature enacted Act 217, henceforth requiring parties seeking to contest primary and special primary elections for cause to file a complaint with the supreme court clerk, rather than the circuit court clerk. 1973 Haw. Sess. Laws Act 217, § 1(aaa) at 462. The Legislature further required that the supreme court clerk "shall issue to the defendants named in the complaint a summons to appear before the supreme court not later than 4:30 p.m. on the fifth day after service thereof." *Id.* Significantly, the Legislature modified the previous requirement that the circuit court "shall within four days following the return give judgment," stating that the supreme court "shall *not later than 4:30 p.m. on the fourth day after* the return give judgment . . . ." *Id.* (emphasis added).

In 1990, as it is today, the statute regulating the procedure for contesting primary and special primary elections for cause was found in HRS § 11-173.5. *See* HAW. REV. STAT. § 11-173.5 (1985 & 2009). Until 1990, HRS § 12-8 did not provide for judicial review of objections to nomination papers. *See* HAW. REV. STAT. § 12-8 (1985). That year, however, the Legislature enacted Act 125. 1990 Haw. Sess. Laws Act 125, § 1 at 231-32. Act 125 stated that if the chief election officer or clerk determined that an objection to nomination papers may warrant the disqualification of a candidate, then the chief election officer or clerk "shall file a complaint in the circuit court for a determination of the objection; provided that such complaint shall be filed with the clerk of the circuit court not later than 4:30 p.m. on the seventh working day after the objection was filed." *Id.*

Act 125 also added new provisions to HRS § 12-8 with language taken verbatim from HRS § 11-173.5. Act 125 states:

> [ ] If the chief election officer or clerk in the case of county offices files a complaint in the circuit court, the circuit court clerk *shall issue to the defendants named in the complaint a summons to appear before the court not later that [sic] 4:30 p.m. on the fifth day after service thereof.*
>
> [ ] The circuit court *shall hear the complaint in a summary manner and at the hearing the court shall cause the evidence to be reduced to writing and shall not later than 4:30 p.m. on the fourth day after the return give judgment fully stating all findings of fact and of law. . . .*

*Id.* at 232 (emphasis added).[9] These are the provisions at issue in this case.

### 3. HRS §§ 12-8(g) and (h) procedures.

Upon the timely-filed challenge to a primary candidate's nomination papers, the circuit court clerk "shall issue to the defendants named in the complaint a summons to appear before the court not later than 4:30 p.m. on the fifth day after service thereof." HAW. REV. STAT. § 12-8(g). "The summons and complaint shall be served together." Haw. R. Civ. P. 4(d). Upon service of the complaint and summons, the circuit court will enter judgment not later than 4:30 p.m. on the fourth day after the return day of the summons. HAW. REV. STAT. § 12-8(h). In other words, the Legislature intended that the circuit court should have nine days after service of the complaint and summons, except as those days may be counted under HRS § 1-29 (2009) and Hawai'i Rules of Civil Procedure Rule 6(a), to hold a hearing on the complaint, cause the evidence to be reduced to writing, and enter judgment fully stating all findings of fact and of law.

---

[9] While H.B. No. 2207, the bill which became Act 125, was still in committee, then-Lieutenant Governor Benjamin J. Cayetano presented testimony to the House Committee on Judiciary on February 8, 1990. *A Bill for an Act Relating to Challenges to Candidate Nomination Papers: Hearing on HB 2207 Before the H. Comm. on Judiciary*, 15th Leg. (Haw. Feb. 8, 1990) (testimony of Benjamin J. Cayetano). Attached to his testimony are proposed amendments to HRS § 12-8, which include the identical language found in HRS §§ 12-8(g) and (h). *Id.* Summarizing the import of these amendments, Lt. Governor Cayetano testified that after the chief election officer or clerk files a complaint in circuit court, "[t]he court shall conduct a summary hearing with all evidence reduced into writing *and issue its judgment within a limited amount of time.*" *Id.* (emphasis added).

4.  Judgment must be filed not later than nine days after service of the summons.

In general, "[w]here the language of a statute is plain and unambiguous that a specific time provision must be met, it is mandatory and not merely directory." *Tataii v. Cronin*, 119 Hawai'i 337, 339, 198 P.3d 124, 126 (2008) (quoting *Coon v. City & Cnty. of Honolulu*, 98 Hawai'i 233, 255, 47 P.3d 348, 370 (2002)) (internal quotation marks omitted). With respect to a similar statute providing that a complaint challenging election results "shall be filed in the office of the clerk of the supreme court not later than 4:30 p.m. on the twentieth day following the . . . election," the supreme court held that "the twenty-day provision is clear and must be given a mandatory reading." *Id.*

The supreme court has also recognized, however, that "a statute specifying a time within which public officials are required to perform an act is directory unless . . . the nature of the act or the statutory language indicates that the time was intended to be a limitation." *Malahoff v. Saito*, 111 Hawai'i 168, 192, 140 P.3d 401, 425 (2006) (State was not authorized to implement payroll lag following expiration of specific time schedule mandated by statute). Put another way, it is directory unless, among other things, "time is of the essence of the act required[.]" *Perry v. Planning Comm'n of the Cnty. of Haw.*, 62 Haw. 666, 676, 619 P.2d 95, 103 (1980). In evaluating whether a provision is to be accorded directory or mandatory effect, our objective is to ascertain the legislative intent. *State v. Himuro*, 70 Haw. 103, 105, 761 P.2d 1148, 1149 (1988)

The Hawai'i Supreme Court has articulated a three-prong test to determine when the word "shall" may be interpreted as directory:

> First, "shall" can be read in a non-mandatory sense when a statute's purpose "confute[s] the probability of a compulsory statutory design." Second, "shall" will not be read as mandatory when "unjust consequences" result. Finally, "the word 'shall' may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it that construction."

*Leslie v. Bd. of Appeals of the Cnty. of Hawai'i*, 109 Hawai'i 384,

394, 126 P.3d 1071, 1081 (2006) (citations omitted) (quoting *Perry*, 62 Haw. at 676-77, 619 P.2d at 102-03) (statute requiring that developer shall apply for a special management area use permit was mandatory).

        i.    The statute's purpose favors a compulsory design.

"The legislative intent may be determined from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." *Tataii*, 119 Hawaiʻi at 339, 198 P.3d at 126 (quoting *State v. Himuro*, 70 Haw. at 105, 761 P.2d at 1149) (internal quotation marks omitted). The Circuit Court found that "the purpose of election laws determining the qualifications of a candidate as found in HRS Section 12-8 is to determine if a candidate is qualified to run for the given elected office[.]" Although correct in part, the Circuit Court's formulation is incomplete to the extent that it omits the temporal context: that the purpose is to *timely* determine the qualifications of the candidate for public office.[10] Primary elections, and the election season in general, will not wait for legal challenges to be resolved.[11]

---

[10]    Nomination papers are *deemed valid* unless a *timely* objection is made, as "all objections *shall* be filed in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to the primary or special election." HAW. REV. STAT. § 12-8(a) (emphasis added). Even if a timely objection is made and the county clerk believes that the objection warrants disqualification, the county clerk "*shall* file a complaint in the circuit court . . . not later than 4:30 p.m. on the seventh working day after the objection was filed." HAW. REV. STAT. § 12-8(e) (emphasis added). The Legislature's use of the word "shall," as it pertains to the filing of an objection and the filing of a complaint, is mandatory and not directory — in other words, if these provisions are not complied with, an otherwise unqualified candidate will not be disqualified under the procedures set forth in HRS § 12-8. *See Tataii*, 119 Hawaiʻi at 338 n.2, 339, 198 P.3d at 125 n.2, 126 (with respect to a statute providing that a complaint challenging election results "shall be filed in the office of the clerk of the supreme court not later than 4:30 p.m. on the twentieth day following the . . . election," the supreme court held that "the twenty-day provision is clear and must be given a mandatory reading").

[11]    The different time periods required for action under HRS § 12-8 suggest that the Legislature made deliberate choices that were not intended to be suggestions. To hold otherwise would be to "confound the statutory scheme." *See Himuro*, 70 Haw. at 105, 761 P.2d at 1150.

17

That the purpose of HRS § 12-8 is to permit prompt or timely resolution of challenges to candidates' nomination papers, is supported by the context in which primary elections occur: the short time frames involved in elections; the time needed for election officials to prepare the primary ballots; and the unfairness to a candidate associated with having his or her nomination challenged but not resolved for an extended period, including possibly through the primary election itself. A mandatory reading of the judgment-filing deadline in HRS § 12-8(h) appears most consistent with the legislative intent. In fact, it appears necessary in order to ensure timely resolution prior to the primary election.[12]/

> ii.  Reading "shall" as mandatory in HRS § 12-8(h) does not impose unjust consequences.

The consequences of reading "shall" as mandatory in this case are not unjust. The situation is much like that in *Himuro* where the defendant faced sanctions for violating Hawai'i's implied consent law for refusing to submit to a blood or breath test. Before imposing sanctions, the law required that "[a] hearing to determine the truth and correctness of an affidavit submitted to a district judge shall be held within twenty days after the district judge has received the affidavit." 70 Haw. at 105, 761 P.2d at 1149. When the hearing was held on the twenty-first day after receipt of the affidavit, the district court dismissed the case.

---

[12]/    A mandatory reading of "shall" in the instant case is consistent with the legislative history of how language adopted verbatim from HRS § 11-173.5 evolved in the context of contests for cause in primary and special primary elections. *See supra* Section III.B.2 at 11-15. *Compare Rose*, 27 Haw. at 598 (description of Municipal Act provisions), *with* 1925 Haw. Sess. Laws Act 226, § 1 at 272-73. Such differences presumably reflected the *Rose* court's concern that contests for cause of primary elections presented a unique challenge — namely, that a drawn out contest process would extend beyond the date of the general election. *See Rose*, 27 Haw. at 600.

Furthermore, in 1970, the Legislature reduced the amount of time that the circuit court had to enter judgment from eight days to four days after the return day, indicating that the time for filing the judgment is of the essence. *See* Legislative Reference Bureau, 1970 Digest and Index of Laws Enacted, 1970 Reg. Sess. at 31. *Compare* HAW. REV. STAT. § 13-64 (1968) (eight days), *with* 1970 Haw. Sess. Laws Act 26, § 2 at 43-44 (four days).

Noting that the purpose of requiring a prompt hearing under the implied consent law was not specified in the legislative history, the Hawai'i Supreme Court said that it nevertheless appeared clear

> that the legislature's object was to provide a procedure for the *prompt revocation* of an arrested person's driver's license upon refusal to submit to sobriety testing. The license revocation procedure contributes to the overall goal of preventing traffic accidents by removing intoxicated drivers from the highways *as expeditiously as possible*.

*Id.* at 105-06, 761 P.2d at 1150 (emphasis added). The court "acknowledge[d] that the consequences of a mandatory construction are harsh to the state in the instant case, since the [defendant] will avoid the sanctions of the statute simply because the hearing was held one day late." *Id.* at 106, 761 P.2d at 1150. Nevertheless, the court affirmed.

Here, the consequences are no different than if the original complaint was never filed or not filed on time. We keep in mind as well the fact that, in this case, counsel for the County Clerk conceded at oral argument that the County Clerk was responsible for the court clerk's issuance of the incorrect form of summons. Although perhaps harsh, we do not find the consequence of a mandatory reading of "shall" under the circumstances to be unjust.

> iii. Advantage would be lost and benefit would be sacrificed if "shall" was read as directory.

Because of the short time frames involved in elections, the time needed for election officials to prepare the primary ballots, and the unfairness to a candidate associated with having his or her nomination challenged but not resolved for an extended period of time, candidates would be disadvantaged by a process that permitted an open-ended challenge to their qualifications. As such, advantage would be lost and benefit would be sacrificed if "shall" is read as directory in HRS § 12-8(h).

Extended legal challenges can adversely affect campaigns and the tenor of the election in general. In this case, for instance, even though David's name appeared on the ballot and, therefore, she did not suffer deprivation of the

19

ultimate right that she sought to vindicate (to be permitted to run for office from Council District 6), the specter of the County Clerk's complaint charging David as ineligible to run for office hung over her campaign until the election.

Based on these considerations, we hold that it was the Legislature's intent that time was to be a limitation and that the provisions requiring that judgment be issued within nine days of the summons being served are mandatory rather than directory.

5.    Judgment was entered too late.

The Circuit Court failed to enter judgment within nine days after the service of the Complaint. Although the County Clerk did not file proof of service, David's RASC indicates that David accepted service on August 5, 2010. HRS § 12-8(g) required the service of a summons to appear before the court not later than 4:30 p.m. on the fifth day after service of the complaint and summons — that is by August 10, 2010. As the Circuit Court found, the circuit court clerk did not issue the summons required by HRS § 12-8(g), but instead called upon David to serve an answer to the Complaint within twenty days after service of the summons. The mandatory nature of the nine-day requirement is not altered, however, just because the substance of the summons actually issued failed to comply with HRS § 12-8(g), as this would defeat the Legislature's intent.

HRS § 12-8(h) required that the Circuit Court hold a hearing and enter judgment stating all findings of fact and of law not later than 4:30 p.m. four days after August 10, 2010, which was August 16, 2010. *See* Haw. R. Civ. P. 6(a). A hearing was not held, however, until September 9, 2010. Most important, the Final Judgment was not entered until September 20, 2010, more than a month after the last day it should have been entered under a mandatory reading of the statute and two days after the primary election.

The application of a mandatory deadline does not lead to unjust consequences in this case. The record does not reveal that David utilized delaying tactics, or that there were any other extraordinary circumstances, besides the improper form of

the summons, that prevented the case from being decided by the statutory deadline.

Section 12-8, when read as a whole, states that a candidate's nomination papers "shall be deemed valid" unless the candidate is disqualified pursuant to the procedures set forth in the statute. *See* HAW. REV. STAT. § 12-8(a). The failure to enter judgment within the statutory time period necessitates our vacating the Final Judgment and the dismissal of the Complaint.

Because we hold that the Final Judgment is void, we express no opinion on the constitutionality of Section 3-3's ninety-day-registered-voter requirement.

IV. Conclusion

The September 20, 2010 and the September 23, 2010 Final Judgments, entered by the Circuit Court of the Third Circuit, are hereby vacated and the case is remanded with instructions to dismiss the Complaint.


Michael J. Udovic
(William V. Brilhante, Jr.
and Brooks L. Bancroft,
with him on the briefs)
for Plaintiff-Appellant/
Cross-Appellee

Michael J. Matsukawa
for Defendant-Appellee/
Cross-Appellant